### BRIGHAM *v*. DARDANELLE & RUSSELLVILLE RAILWAY COMPANY.

#### Opinion delivered July 1, 1912.

1. APPEAL AND ERROR—REVIEW—DIRECTION OF VERDICT.—In determining, on appeal, the question whether there was sufficient evidence to support a verdict in favor of the party against whom the court directed one, that view of the testimony most favorable to such losing party will be accepted, and such testimony given its strongest probative force. (Page 267.)

2. TRIAL—DIRECTING VERDICT.—When the facts are undisputed, and when different minds can not draw different conclusions therefrom, it becomes the court's duty to direct a verdict. (Page 268.)

Appeal from Pope Circuit Court; *Hugh Basham*, Judge; affirmed.

*R. B. Wilson* and *J. T. Bullock*, for appellant.

The question of the negligence of the engineer should have been submitted to a jury. 98 Ark. 178; 91 *Id*. 337; 38 Cyc. 1567, 1578.

*Brooks & Hays* and *J. W. & J. W. House, Jr.*, for appellee.

This case is settled by 98 Ark. 178. There was legal evidence of negligence on the part of the engineer. There was nothing to submit to a jury, and the court properly directed a verdict.

KIRBY, J. The appeal herein comes from a directed verdict. It is the second appeal of this case, which is sufficiently stated in the opinion on the first appeal in 98 Ark. 178.

Upon the trial anew, the court directed a verdict in favor of appellee, and its action is complained of as error by appellant.

In deciding the question, whether there is sufficient testimony to support a verdict in favor of the party against

whom the court directed one, the rule is that that view of the testimony most favorable to the losing party shall be accepted and the testimony in his favor given its strongest probative force; and when there is a conflict in the testimony on the material points at issue, or when the testimony is such that different minds may reasonably draw different conclusions therefrom, it is the duty of the trial court to submit the issues to the jury for determination. *Crawford* v. *Sawyer-Austin Lumber Co.*, 91 Ark. 340; *St. Louis, I. M. & S. Ry. Co.* v. *Coleman*, 97 Ark. 442; *Williams* v. *St. L. & S. F. Rd. Co.*, 103 Ark. 401.

The question of sufficiency of the evidence is one of law, and it is only when the facts are undisputed, and when different minds can not draw different conclusions therefrom, that it becomes the court's duty to direct the verdict. *St. Louis, I. M. & S. Ry. Co.* v. *Coleman, supra; Catlett* v. *Railway Co.*, 57 Ark. 461.

Upon remanding the case, the court said: "The only theory upon which the appellee could recover damages of appellant is the one that the engineer, Shuttle, was guilty of negligence in failing to give a stop signal as soon as the Iron Mountain engine started down the track towards him. The fireman was at the time, according to some of the testimony, at work shovelling coal, and did not see the approaching engine. The duty, therefore, of avoiding the injury devolved entirely upon the engineer; and if he discovered the approaching engine in time to have avoided a collision, or in time to have warned the fireman so that he could escape before the collision, and failed in his duty, then appellant is responsible for his negligence in that respect. It appears from the great preponderance of the evidence that, as soon as the engineer realized that the other engine was not coming to the house track, he gave a stop signal, and did all that he could reasonably do to avoid a collision. Still, the evidence shows that when the Iron Mountain engine started it gave a start signal, which meant that it was about to resume its journey, and there was room to find that appellant's engineer should have taken cognizance of the fact that there was danger of a collision, and that the trainmen on the other engine were unconscious of his presence, and should have given a stop signal earlier than he did.

The evidence tends to show that the engineer on the Iron Mountain engine was reading his orders, and did not look to see the other engine ahead of him. If this be true, an earlier signal might have attracted his attention; at least, the jury might have so found."

The testimony herein is undisputed that, after appellee's engine came on to the Iron Mountain main line, as it had the right to do in switching cars, and went down to its spur for leaving said main line, the Iron Mountain train was near its own depot, standing. When appellee's engine pulled its train across the switch to back in on its main line, the engineer saw the Iron Mountain train start towards it, and blew a danger stop signal when it was about 600 feet distant. The Iron Mountain train shut off the steam, and appellee's engineer thought of course it was regarding the signal and would stop, and diverted his attention to backing his train in upon the switch, looking in the direction it was going, as it was his duty to do. Before he cleared the main track a boy hallooed at him, and he looked and discovered the Iron Mountain train within one or two car lengths of his train. He immediately yelled to the fireman, appellant's decedent, to jump, and blew the whistle. The fireman at the time was in the gangway and started out on the east side of the train, and then turned to the other side, and was killed in the collision. He was at his post on the seat of the cab when the stop signal was first given to the Iron Mountain train, 600 feet distant, and could have seen the train if he had looked. It is undisputed that the engineer of appellee's train, the instant he discovered the approach of the Iron Mountain train, after he had given the first stop signal, and its steam was shut off and it appeared to be stopping, notified the fireman to jump, and at the same time blew the danger stop signal again. The fireman would have escaped if he had gone out on the side as he first started, but in turning to cross the other way he was caught.

As already said, the duty of avoiding the injury devolved entirely upon appellee's engineer, the fireman at the time being engaged in shovelling coal where he could not see the approaching engine; and if the engineer discovered it in time to have avoided the collision, or in time to have warned the fireman so that he could have escaped therefrom and failed in

his duty, then appellant is responsible for his negligence in that respect.

But the undisputed testimony shows that the engineer gave the stop signal as soon as he discovered the Iron Mountain train had started towards him, and when it was 600 feet away; that it shut off steam, and he supposed it would stop, and directed his attention to his own train; that the fireman was at his post of duty when this signal was given, and could have seen this other train as well as the engineer if he had looked. It is further undisputed that, the moment the engineer discovered the approaching train, thereafter he warned the fireman to jump, at the same time blowing the danger stop signal. There was no negligence upon the engineer's part after his discovery of the approaching train within one or two car lengths of his engine, as shown by the undisputed testimony, measured by the rule set out applicable thereto; and it was further shown that the first signal was given when the other train was 600 feet away, in plain view of the fireman, whose duty it was to take some care for his own protection.

The case was reversed for other errors and remanded on the first appeal because it did not appear that the testimony was fully developed upon this point.

Weighing the testimony on the last trial by the rule, as announced, it was not sufficient to support a verdict in appellant's favor and the court committed no error in directing a verdict for appellee.

The judgment is affirmed.