JEROME HARDWOOD LUMBER COMPANY *v.* DAVIS BROTHERS LUMBER CO., LTD.

Opinion delivered November 26, 1923.

1. PRINCIPAL AND AGENT—PRIMA FACIE SHOWING OF AUTHORITY.— In an action by seller for breach of a contract to accept goods, defended on the ground that the buyer's alleged agent had no authority to enter into the contract, letters written on buyer's letterheads, signed by buyer, by such agent as its sales manager, and a telegram signed by buyer, referring to a letter so signed, *held* to make a *prima facie* showing of authority.

2. PRINCIPAL AND AGENT—BURDEN OF SHOWING WANT OF AUTHORITY. —In a seller's action for refusal of buyer to accept goods sold, where the defense was that the buyer's agent had no authority to make such contract, the seller had the burden of proving such authority.

3. CONTRACTS—LETTERS AND TELEGRAMS.—Contracts may be made by telegrams and letters.

4. SALES—ORDER AND ACCEPTANCE.—Where an order requiring seller to "acknowledge receipt of this order promptly, stating when shipment will be made," was remailed by shipper to buyer with the word "accepted" written thereon, this constituted a contract, notwithstanding seller's failure to state time of shipment, in view of the buyer's subsequent recognition of the contract as binding.

5. SALES—INDEFINITENESS OF CONTRACT.—A contract for the sale of "2 carloads 4-4″ No. 2 and 3 common plain oak" *held* not too vague and uncertain as to quantity and classification of grades to form a basis for damages; the terms used being explained by testimony as to trade usages.

6. SALES—REFUSAL TO ACCEPT SHIPMENT—DAMAGES.—Seller's damages for buyer's refusal to accept lumber was the difference between the contract price and the market price on the date when the buyer notified the seller it would not accept the shipment.

7. SALES—INTEREST ON DAMAGES.—Where the amount of damages to which the seller was entitled was easily ascertainable on the date on which the buyer notified the seller of its refusal to

accept the shipment, the seller was entitled to interest on the amount of such damages from such date until the date of the judgment.

8. TRIAL—DIRECTED VERDICT.—Where both parties prayed for a directed verdict, but the party against whom the verdict was directed asked for additional instructions, the undisputed evidence should be given its strongest probative force in favor of such party.

Appeal from Drew Circuit Court; *Turner Butler*, Judge; affirmed.

*J. G. Williamson, Lamar Williamson* and *Adrian Williamson,* for appellant.

The contract was not accepted according to its terms, and never became binding. The acceptance of an offer must be in accordance with the terms of the offer. 23 R. C. L. 1284; 35 Cyc. 53; 112 Ark. 380; 97 Ark. 613; 90 Ark. 131; 107 Ark. 224; 25 Ark. 545. There was no evidence that the contract was signed by any person authorized to bind appellant. The authority of an agent cannot be proved by his own declarations. 114 Ark. 301; 92 Ark. 315. The purported contract of purchase is entirely too vague and uncertain as to quantity and proportional classification of the material ordered, to form a basis for the calculation of damages. See 9 C. J. p. 1293; 14 S. W. 1069, 1079; 88 Ark. 492; 23 Ark. 63; 96 Ark. 188; 117 Mo. App. 19; 13 C. J. 266-268, § 59; 6 R. C. L. 643-644, § 59; 6 R. C. L. p. 647, § 61. It was error to direct a verdict. But in no event should interest have been awarded on unliquadated damages before judgment. 8 R. C. L., p. 533, § 86; 72 Cal. 498, 1 Am. St. Rep. 75; 17 C. J., p. 815, § 137; 21 Ark. 350; 52 Ark. 473; 11 A. L. R. 576; 3 A. L. R. 805, and note at p. 809. Acceptance of an offer or order must be made within a reasonable time, and the jury should have been allowed to say whether the offer was so accepted. 96 Ark. 27; 105 Ark. 575; 113 Ark. 221. By failing to ship within a reasonable time, the appellee itself was in default. 88 Ark. 491.

*Henry & Harris,* for appellee.

Appellant is estopped to deny the validity of the contract, as it recognized same as binding, both by numerous letters and telegrams, and even went so far as to ask a cancellation of the contract. 33 Ark. 465; 147 Ark. 555. On the question of uncertainty as to quantity sold, raised by appellant, the case cited by appellant in 96 Ark. 184 is against him. The other cases cited on the point are not applicable. A carload is "a load that fills a car." 9 C. J. 1293. A directed verdict was proper, as the question of the sufficiency of the evidence was one of law for the court, the facts being undisputed. 97 Ark. 442. Upon a breach of contract the rule is that the measure of damages is the difference between the price fixed by the contract, and the market value at time of delivery or offer to deliver. 92 Ark. 116; Ann. Cas. 1913-C., 765, and notes. Interest was properly allowed, as compensation for the wrongful detention of the money. 50 Ark. 169; 69 Conn. 228; 88 Ark. 557; 26 C. C. A. 23; 192 Mass. 391; 93 N. Y. S. 319; 68 S. W. 53; 116 S. W. 783.

WOOD, J. This is an action by the appellee against the appellant to recover damages for an alleged breach of contract. The appellee alleged, in substance, that the appellant, on the 17th of May, 1920, sent to the appellee an order for certain lumber; that appellee accepted the order, and was at all times ready, willing and able to perform the contract on its part, but that appellant breached the contract on the 30th of March, 1921, by canceling the order, to appellee's damage in the sum of $1,642.50, for which the appellee prayed judgment.

The appellant answered denying specifically the allegations of the complaint.

F. M. Sparks testified, as a witness for the appellee, to the effect that he was the sales manager of the appellee. He identified the order for the purchase of the lumber, which order was attached as an exhibit to appellee's complaint, and introduced the same in evidence. That order is as follows:

"Lumber Purchase Order

"Jerome Hardwood Lumber Company.

"Put this number on your inv.

"Jerome, Arkansas, May 17, 1920.

"Order No. F267.

"To Davis Bros. Lumber Co.,

"Ansley, Louisiana.

"Ship from Jerome Hardwood Lumber Co.

"Ship to Jerome Hardwood Lumber Co.,

"Jerome, Arkansas.

"Route via Mo. P. at El Dorado, Ark.

"Terms cash less 2 per cent.

"All agreements contingent upon strikes, fires and other delays unavoidable and beyond our control.

"Please enter our order for the following material for shipment in accordance with above instructions:

"2 carloads 4-4″ No. 2 and 3 common plain oak, as follows:

"4-4″ No. 2 common.................................................$80.00

"4-4″ No. 3 common.................................................$30.00

"The stock to be nicely manufactured, of good average widths and lengths, good dry stock, and otherwise in accordance with verbal order given you by our Mr. Smith, and the National rules. Show ourselves as shippers and consignees, inserting in each B-L:

"For manufacture and reshipment.

"F. O. B. cars Ansley, La.

"Lengths standard—Good average.

"Widths standard—Good average.

"Inspection—Mutual—According to the National Hardwood Lumber Association rules of inspection, in case of dispute the stock to be loaded by a National inspector, the expense of said to be divided equally.

"Acknowledge receipt of this order, promptly, stating when shipment will be made. Mail invoice in dupli-

cate for each shipment, together with original and duplicate bill of lading on date of shipment.

"JEROME HARDWOOD LUMBER COMPANY.
"By J. M. Wells.

"Accepted: Davis Bros. Lumber Co., Ltd.
"By F. M. Sparks."

The witness, over the objection of appellant, identified a letter addressed to the appellee, dated May 18, 1920, in which the above order in duplicate was inclosed. Witness wrote the word "Accepted" on the order and returned it to the appellant. This letter of May 18, 1920, was written on the letterhead of the appellant, and showed the names of the president, the vice-president, the secretary and treasurer, and the name of J. F. Moeller as sales manager of the appellant, and set forth the business in which appellant was engaged. The letter set out the terms and conditions upon which the order was made, and concluded as follows: "Our Mr. Smith advises that he called on you last week and placed order with you for two carloads of 4-4″ No. 2 and 3 common plain oak on basis of $80 and $30 f. o. b. cars Ansley, and we are herewith inclosing our formal order F-267 covering these two cars of oak. Please accept duplicate order, returning for our files, and please also advise when you will be ready to ship this stock, and we will arrange to have one of our inspectors accept same.

"Yours very truly,
"JEROME HARDWOOD LUMBER CO.
"J. M. W.-B.                    (Signed) J. M. Wells."

Seven other letters were introduced, written on what purported to be the letterheads of the appellant as above set forth, addressed to the appellee. All of these letters were signed with the appellant's name by J. M. Wells, "manager of lumber sales," except one, which had the appellant's name signed thereto by M. A. Bates. Appellee also introduced two telegrams dated at Jerome, Arkansas, and signed by the Jerome Hardwood Lumber Company. One of these telegrams, dated July 28, 1920,

was as follows: "Sorry unable to send inspector see letter." The other was dated March 22, 1921, and stated as follows: "Answer yours 15th delayed again manager absent writing fully today."

It would unduly extend this opinion to set out this correspondence *in haec verba,* and we will therefore only state the substance as we deem it material. It pertains to the alleged contract between the appellant and the appellee for the sale and purchase of the lumber.

The witness further identified and introduced the letters of the appellee to the appellant. The first one of these letters was dated June 23, 1920, in which the appellee, in substance, stated that it had the lumber ready for shipment which had been ordered by the appellant on May 17, 1920, but was then unable to ship the same on account of scarcity of cars, and suggesting that the appellant allow the appellee to inspect the lumber for the appellant and ship the same on the guaranteed inspection, and concluded this letter by requesting the appellant to advise the appellee immediately whether appellant would be willing to allow appellee to ship more than three cars on appellant's order.

The purported letter of the appellant, in answer to the above letter, dated June 26, 1920, stated that appellant preferred to have all the lumber purchased under its form of order inspected by its own inspector, but was unable to state definitely when it could send its inspector, and stating that, if satisfactory to the appellee, appellant preferred to cancel the order, requesting appellee to advise appellant if it would be satisfactory to cancel the order. Appellee answered this letter on June 26th, notifying the appellant that it was not satisfactory to cancel the order, and saying: "As we reserved the stock for you and have been holding it for some time."

In answer to this letter the appellant wrote on July 2, 1920, in substance reiterating that it preferred to have the lumber inspected by its own inspector, and that it

would arrange as soon as it could to have one of its inspectors go to appellee's plant and load the stock out. As late as July 28, 1920, the appellant wrote the appellee, acknowledging receipt of a telegram from the appellee, and stating that it was sorry that it was unable "to send an inspector to take up the two cars of oak," and that it was not in a position to take the stock at that time, but just as soon as it could arrange to do so it would advise the appellee.

The appellant, after this letter, did not advise the appellee to ship the lumber. Appellee, at all times, had the lumber on the yards ready for shipment, but did not, from the time of receiving the last letter until February 16, 1921, have any correspondence or conversation with the appellant in regard to the lumber. On the latter date the appellee wrote appellant, stating, in substance, that it had been holding the stock for appellant since May, and asking appellant to send its man down to load the stock out during the month of February, and concluded by saying: "We shall expect to hear from you definitely within the next ten days." The appellee again wrote the appellant on March 15, 1921, referring to its letter of February 16, and stating that it had not received any answer thereto, and therefore assumed that appellant did not intend to take the lumber, and requested appellant to send its check to appellee for the difference between the then value of the lumber and the price named in the purchase order, which it estimated to be the sum of $1,642.50, and stating to appellant that it would cancel its order and relieve appellant from any further connection with the lumber upon receipt of appellant's check for the above amount. The appellant answered the above letter, stating that it was under the impression that the order had been canceled, as it had been placed with the appellee since May, nearly a year previous, and suggesting that appellant had shut down and had no place to use the lumber, and that the best way to settle the matter was to have a meeting of their respective representa-

tives to discuss the same, and suggesting the time and place of such meeting for March 30 at Ruston, Louisiana.

The appellee answered this letter on March 24, saying in substance that its representative would meet the representative of the appellant to talk the matter over at the time and place mentioned in appellant's letter. The appellant answered this letter on March 25, saying in substance that it would have its representative on hand at the time and place designated. Appellant objected to the above letters of the appellee, on the ground that they were self-serving.

Witness further testified that Wells, representing the appellant, met the witness at Ruston at the time and place designated, and Wells informed witness that the appellant could not use the lumber covered by the order. Appellant objected to this testimony.

Of the letters referred to in the correspondence, one was written by M. A. Bates, dated May 6, 1921. This letter was signed with appellant's name by M. A. Bates, and it acknowledged the receipt of a letter from appellant of the 5th instant, and stated that the matter would have to be held in abeyance "for the reason that our Mr. J. M. Wells is now absent from the office." The letter stated that, upon Wells' return, the matter would receive prompt attention.

The court, over the objection of appellant, permitted the witness to read a purported letter from the appellant dated May 10, 1921, which concluded as follows: "So if, after further consideration, you desire to accept our offer, please advise and we will forward check, otherwise we will of course be compelled to stand suit. Yours very truly, Jerome Hardwood Lumber Company. (Signed) J. M. Wells, mgr. lumber sales."

The appellee announced that it offered that part of the letter to show that appellant had canceled its order in the conference with Wells, and for no other purpose. The court thereupon announced that the letter would be admitted for that purpose and no other, and instructed

the jury that the above portion of the letter was admitted for the purpose of enabling them to determine whether in fact the cancellation of the contract was made on or about the time of the conference between Wells and Sparks at Ruston, Louisiana.

The witness testified that the appellee had the lumber on hand to fill the order from the time same was accepted until March 30, 1921, when it was sold with other lumber to Bruce & Co. The witness testified as to the market value of the lumber, which we will refer to hereafter.

Witness further testified that a carload of lumber of the grade and character specified in the order was anywhere from ten to twenty-five thousand feet, depending upon the size of the car. Fifteen thousand feet was considered a carload. It would sometimes run more and sometimes less, but the average shipment was 15,000 feet. Dry oak runs about 4.240 pounds per thousand feet, and 15,000 feet would load a 60,000-pound capacity car; that is the maximum. The minimum weight of a 34-foot car is 30,000 pounds. A carload of lumber is a car loaded to its capacity—a load that fills the car. A 60,000-pound capacity car should be loaded to 60,000 pounds. A 30,000-pound capacity car should be loaded with 8,000 feet. That is a minimum carload on a 34-foot car. A carload would be anything from eight thousand to twenty-five thousand or twenty-eight thousand feet. Witness had loaded 28,000 feet of oak in a 60,000-pound capacity car. Large box-cars are 100,000 pounds capacity.

Over the objection of the appellant, witness stated that the first time he met Wells after he was employed by the appellant was at Ruston, La., March, 1921. Witness stated that the lumber could not have been shipped for the lack of cars and labor until after its letter of June 23, 1920. The lumber was never loaded on the cars. The buyers were supposed to send an inspector to receive the stock and inspect the same before it was loaded, and appellant's inspector never came.

Other witnesses for the appellee, lumber inspectors, testified that, among hardwood lumber men, an average

carload was considered something about 15,000 feet. There was testimony to the effect that the oak lumber grades run first and second, No. 1 common and No. 2 common and No. 3 common. Nos. 1 and 2 are stacked in one pile and considered all one grade. It develops something like five per cent. No. 3. No. 3 common is stacked in separate piles. One witness stated that not exceeding ten per cent. No. 3 common plain oak would develop in a pile of Nos. 1 and 2—probably thirty per cent. would be No. 2. After an order is placed like the order in suit for Nos. 2 and 3 common plain oak, it means that Nos. 2 and 3 common should be taken out of such piles as would be convenient to get it out of. Where the lumber is stacked from the mill with Nos. 1 and 2 in one pile and No. 3 in another pile, you would get the order out of the Nos. 1 and 2 piles, for the reason that there would be some No. 3 in it.

One of the witnesses testified that he was in the employ of the appellant in June, 1919. At that time J. M. Wells was the sales manager of appellant. This witness stated that he worked at Jerome in 1918 and 1919. He couldn't recall the name the company was operating under at that time. Witness believed that the company was operating under the name of Bliss-Cook Oak Company. It was agreed that the appellant was incorporated the latter part of December, 1919, and started business on January 1, 1920; that it bought all the assets of the Bliss-Cook Oak Company.

The above states substantially the material testimony adduced at the hearing. The appellant prayed the court to instruct the jury to return a verdict in its favor, and also prayed the court to give other instructions, all of which the court refused. The appellant duly excepted to the rulings of the court. The appellee prayed the court to instruct the jury to return a verdict in its favor for the sum of $1,642.50 with interest at six per cent. thereon from March 30, 1921. The court granted this prayer, and appellant duly excepted to the ruling. The

jury returned a verdict as directed, and judgment was rendered in favor of the appellee, from which is this appeal.

1. The first and principal question in the case is whether or not the undisputed testimony shows that J. M. Wells was the agent of the appellant, with authority to enter into the alleged contract with the appellee for the sale and purchase of the lumber. The only proof of such agency and authority is the letters and telegrams in the record, signed with the appellant's name by J. M. Wells. It was admitted by the parties that the appellant succeeded to all of the assets of the Bliss-Cook Oak Company at Jerome, Arkansas. A witness testified that he worked for the appellant at Jerome in 1918 or 1919, and that, while he was at work there, appellant was operating under the name of Bliss-Cook Oak Company, and witness knew J. M. Wells, who was employed by the appellant as sales manager. The testimony of the witness further showed that he left Jerome about July 1, 1919.

The undisputed testimony shows that the appellant was not incorporated until the latter part of December, 1918, and did not begin business at Jerome until January 1, 1920. So it appears that the above witness was confused in the dates, and that he really never worked for the appellant at the time stated. His testimony, standing alone, would not be sufficient to establish the fact that Wells was the sales manager of appellant on May 18, 1920, when the appellee received the purported letter of appellant, signed by appellant through J. M. Wells, and inclosing the lumber purchase order. But the undisputed fact does appear in the record that the appellant, having succeeded to the Bliss-Cook Oak Company, was in the hardwood lumber business at Jerome, Arkansas, at the time the appellee received the purchase order. This letter containing the order, and all the subsequent letters purporting to be signed with the name of the appellant by J. M. Wells as sales manager, and one letter signed with appellant's name by M. A. Bates, were upon station-

ery with printed letterheads showing the business of appellant. The letters were written and mailed at Jerome, Arkansas. The order itself was upon a printed form designated as "Lumber Purchase Order, Jerome Hardwood Lumber Company, Jerome, Arkansas," and appearing upon its face throughout to be prepared especially for the use of the appellant. In answer to a purported telegram from appellee to appellant asking the appellant to send an inspector to take up the two cars of lumber, a letter and telegram purporting to be signed by the appellant, through J. M. Wells, were sent July 28, 1920. The letter was on the usual letterhead, and referred specifically to the telegram.

There was also a telegram dated March 22, 1921, purporting to be signed by appellant alone, which referred expressly to a letter written March 15 by appellee to appellant, referring to the alleged contract and also referring to a letter of the same date written by Wells for appellant, which letter referred to the alleged contract evidenced by the purported order and acceptance thereof. The letters and the purchase order purporting to have appellant's name signed thereto, by J. M. Wells as sales manager, and the letter purporting to be signed by appellant by M. A. Bates, all on stationery of the appellant appearing to be prepared with great minutiae, especially for appellant's use in its business at Jerome, Arkansas, and the telegram dated March 22, 1921, it occurs to us, make at least a *prima facie* showing that Wells was the sales manager of the appellant, and that he had the authority to order the lumber of the appellee as evidenced by the sales order signed by him.

Under the issue raised by the pleadings, the burden of proof was on the appellee to establish the agency and authority of Wells. The above facts were sufficient to establish Wells' agency and authority to enter into the alleged contract, and, in the absence of any testimony to the contrary, justified the trial court in so finding and declaring as a matter of law. *Morris* v.

*Breedlove,* 89 Ark. 296; *Crane* v. *Morris,* 6 Peters 598, and other cases in 6 Words and Phrases, 5549-50.

2. The next question is, do the purported sales order and the correspondence pertaining thereto constitute a complete and enforceable contract? "It is well settled in this State that contracts may be made by telegrams and letters, and, when so evidenced, it is the duty of the trial court to interpret the contract and declare its terms." *Procter & Gamble Distributing Co.* v. *D. C. Goff Co.,* 159 Ark. 292; *Hart* v. *Hammett Gro. Co.,* 132 Ark. 199, and cases there cited.

Appellant contends that the order was not accepted according to its terms, and that it is too vague and uncertain to constitute an enforceable contract. The order contains this provision: "Acknowledge receipt of this order promptly, stating when shipment will be made." The appellant contends that appellee did not accept the order in accordance with these terms. The undisputed testimony shows that the appellee wrote the word "Accepted," on the order, and remailed the same at once to the appellant. Appellee, however, did not notify the appellant that it had the lumber ready for shipment until June 23. Treating the above provision of the order as an essential part of the contract and assuming that a compliance therewith on the part of the appellee would be necessary to complete the contract, nevertheless, it is clear that such provision was made for the benefit of the appellant, and appellant therefore could waive a compliance with such provision on the part of the appellee. The correspondence clearly shows that, long after June 23, when the appellee notified appellant that it had the lumber ready for shipment, the appellant did not then repudiate the contract, because of delayed notification as to when the shipment would be made, but recognized repeatedly the binding force of the contract, as evidenced by the order and the acceptance thereof.

The contract, evidenced by the order and acceptance thereof, was not too vague and uncertain as to quantity and proportional classification to form a basis for the calculation of damages. In *Jerome Hardwood Lbr. Co. v. Beaumont Lbr. Co.*, 157 Ark. 220-225, we had under review an order on the same printed form as in the case at bar, the only difference being in the number of carloads specified and the kind of lumber. It was contended there, as here, that the contract was too indefinite as to quantity and classification of different grades to form a basis for damages. Answering this contention, we there said: "Under the terms of the contract appellee had a right to deliver four carloads of at least minimum capacity, and the specification, we think, was not too indefinite to constitute an enforceable contract. It is also contended that the contract was too indefinite because it did not specify the quantity of lumber of the different grades. *The effect of the contract is to bind the purchaser to accept carloads of lumber of any of the kinds specified without regard to the quantity of the different grades. In other words, the contract constituted an undertaking to accept lumber of any of the grades specified.*"

The undisputed testimony was to the effect that, among hardwood lumbermen, 15,000 feet of oak lumber is generally considered a carload. It is also undisputed that oak lumber grades run first and second and No. 1 common, No. 2 common, and No. 3 common; that an order calling for No. 2 and No. 3 common plain oak means that No. 2 common and No. 3 common shall be taken out of such piles as would be convenient to get it out of; that lumber at appellee's mill was stacked No. 1 and No. 2 common in one pile and considered all one grade, and No. 3 common in one pile and considered all one grade, and No. 3 common in separate piles; that in a No. 1 and No. 2 pile there develops something like 5 per cent., not exceeding 10 per cent. No. 3, and in a pile of No. 1 and No. 2 common there would be 30

per cent. No. 2. A minimum car was 34 feet, and it would take 15,000 feet of lumber to make a full carload of a minimum car. The average carload was 15,000 feet.

In *Connelly* v. *Parkes,* 160 Ark. 496, where a technical term peculiar to a building trade was used in the contract, we said: "The parties must be held to have used the language of this paragraph in the light of the custom that obtained among engineers, contractors and builders, showing the meaning of such language when applied to building contracts." See also authorities there cited. So here the word "carload," and other words describing the kind and quantity of lumber in this contract, are trade terms and must be construed with reference to the understanding of these terms as they are used in the trade to which they belong. In *Indianapolis Cabinet Co.* v. *Herman,* 34 N. E. 579, it is held that "a contract to furnish a certain number of carloads of white wood is not void for uncertainty because a *carload* varies from 35 to 65 thousand feet." We conclude therefore that, under the undisputed evidence, the "lumber purchase order" was not void for uncertainty.

3. Since the contract was a complete and enforceable one, and since the undisputed testimony shows that, among hardwood lumbermen, the average carload of hardwood lumber of the kind contracted for is 15,000 feet, and that a minimum 34-foot car, when loaded to its capacity, holds 15,000 feet, the appellee, under the contract, was required to sell and the appellant to purchase two carloads, or 30,000 feet, of lumber of any of the grades specified in the order. *Jerome Hardwood Lbr. Co.* v. *Beaumont Lbr. Co., supra.* The order specified No. 2 common and No. 3 common plain oak. Under the authority of the above case the appellee could have charged the appellant for 30,000 feet of No. 2 common plain oak, or, under the undisputed evidence, at its option it could have loaded the cars with ninety per cent. No. 2 common and ten per cent. No. 3 common plain oak, and required appellant to take the cars so loaded;

but, instead, the appellee based its claim for two cars in the proportion of seventy-five per cent. No. 2 common and twenty-five per cent. No. 3 common, which was more favorable to the appellant than it was entitled to under the contract.

4. It follows from what we have said that the court did not err in holding that J. M. Wells was the "manager of lumber sales" of the appellant, with authority to purchase lumber from the appellee. Such being the case, the letters and telegrams between the parties relating to the contract between them were competent. Likewise the testimony of appellee's agent to the effect that he met appellant's representative, J. M. Wells, at Ruston, La., on March 30, 1921, who informed appellee's agent that appellant would not take the lumber as per order, was competent evidence. This testimony was undisputed, and gives the date when appellant definitely breached the contract. The undisputed testimony shows that on that day the market value of No. 2 common plain oak was $15 per thousand feet. There was no market value at all for No. 3 common, but the appellee allowed appellant $6 per thousand feet for No. 3. The difference, therefore, between the contract price and the market value was $65 per thousand feet on No. 2 common and $24 per thousand feet on No. 3 common. The appellee's claim for damages is predicated upon that difference, which, in the aggregate, amounts to $1,642.50. This, under the law, was the correct measure of appellee's damage. *Kirchman* v. *Tuffli Brothers P. I. & C. Co.,* 92 Ark. 112, and cases there cited; *Lanier* v. *L. R. Cooperage Co.,* 88 Ark. 557; *L. R. Lbr. & Mfg. Co.* v. *Boynton,* 147 Ark. 19.

5. The court instructed the jury to return a verdict in favor of the appellee in the sum of $1,642.50, with interest at six per cent. from March 30, 1922. The interest on the date the verdict was rendered amounted to $143.33, and judgment was rendered for the principal sum and the interest. The appellant contends that in no

event could interest have been awarded on the amount claimed by the appellee, because the same was for unliquidated damages, and it cites to sustain its contention, among other authorities, the cases of *Tatum* v. *Mohr,* 21 Ark. 350, and *Clark* v. *Hershy,* 52 Ark. 473.

The facts of the above cases readily distinguish them from the case in hand. Here, upon the breach of the contract by the appellant, the amount of damages growing out of such breach was distinctly fixed by the law and easily ascertainable under criteria mentioned in the contract. The value of the kind and quantity of the lumber specified could be readily calculated and the difference between the actual cash value of the lumber on March 30, 1921, the date when the appellant refused to fulfill his contract, and the amount which the appellant agreed to pay therefor, as specified in the contract, with six per cent. interest, as damages thereon from the date of the breach till the rendition of the judgment, was the measure of appellee's damages.

The appellee made demand upon the appellant for the sum of $1,642.50 as the amount of its damages for appellant's failure to comply with its contract a few days before the appellant announced that it could not take the lumber. Thus the appellee gave the appellant an opportunity to pay a fixed sum which was really less than the amount due at that time. The loss to the appellee of the use of this sum of money from that date should be compensated by the payment of six per cent. interest as damages. *Lanier* v. *L. R. Cooperage Co., supra; L. R. Lbr. & Mfg. Co.* v. *Boynton, supra;* see also *St. L. I. M. & S. Ry. Co.* v. *Biggs,* 50 Ark. 169; *Healy* v. *Fallon,* 69 Conn. 228, 37 Atl. 495.

The parties prayed for a directed verdict, but the appellant asked other instructions. The rule in such cases is to give the undisputed evidence its strongest probative force in favor of the party against whom the verdict is directed, and determine therefrom whether different minds could reasonably draw different con-

clusions. *King* v. *Bank of Pangburn*, 150 Ark. 138; *Webber* v. *Rodgers*, 128 Ark. 25; *Pacific Mutual Life Ins. Co.* v. *Carter*, 92 Ark. 378; *Brigham* v. *Dardanelle & Russellville Ry. Co.*, 104 Ark. 267.

Applying the above rule, we are convinced that there were no errors in the rulings of the trial court. Its conclusion is correct, and the judgment is therefore affirmed.