STANDARD MUTUAL BENEFIT CORPORATION *v.* STATE.

4-5296                                   122 S. W. 2d 459

Opinion delivered December 12, 1938.

*Carmichael & Hendricks,* for appellant.

*Byron Goodson* and *J. F. Quillin,* for appellee.

MEHAFFY, J.   This action was instituted by the state against the Standard Mutual Benefit Corporation. The complaint alleged that the appellant had, through one Francis A'Hearn, sold a policy of insurance to Mrs. Mary Townsend of Mena, Arkansas, and collected the advance premium; that this constituted the doing of business within the state of Arkansas without having appointed an agent and established an office, and that this subjected the appellant to a fine of $1,000; that appellant is a corporation organized under the laws of Florida, having its principal office in the city of Jacksonville; that it had not complied with the laws of the state of Arkansas relative and prerequisite to the lawful transaction of business in this state; had appointed no agent for service in the state, and has no agent for service; that A'Hearn solicited Mrs. Townsend to take out insurance with said corporation, and that she did take out a policy and that said transaction was contrary to and in violation of § 2247 of Pope's Digest. It asked for judgment in a sum not less than $1,000.

The appellant, without entering its appearance for any other purpose, filed motion to quash service, stating

that it had never attempted to qualify to do business in Arkansas; had no agent within the state, nor had it an office in Polk county, Arkansas; that it has not sold any insurance nor issued any policy in reference to the laws of Arkansas, nor was it depending upon the state of Arkansas for any benefit therefrom; that it has not made any contract or agreement with the state of Arkansas for any service rendered or to be rendered, nor for any other purpose, and has not been doing any business whatever in the state of Arkansas; that the court had no jurisdiction, and asked that the service be quashed and the suit dismissed.

The affidavit of H. W. Piper, president of the corporation, was attached to the motion to quash. The appellant, also, filed answer preserving its objections mentioned in the motion to quash.

Mrs. Mary Townsend, a witness for the state, testified in substance that she lives in Mena, Arkansas; has lived there nine years; is seventy years of age; that she knew a man named Francis A'Hearn and he was the insurance agent who came to her house and sold her a policy of insurance in November, 1936, and the name of the insurance company was Standard Mutual Benefit Corporation of Jacksonville, Florida, and that she signed the application; she paid him three dollars; the policy was delivered to her in Mena; she paid one dollar a month for more than a year; she sent the money in their self-addressed envelopes, and they sent her receipts; she does not have the receipts; when she could not pay the premiums she borrowed the money from her children, and when she found out it was a fraud she gathered up the receipts and the policy and burned them all. When asked how long she had known Francis A'Hearn she said he was just coming through the country, came to her house and sold her a policy; paid the premium by sending one-dollar bills in the insurance company's self-addressed envelopes; she sent a one-dollar bill every time.

Here the attorney for the state read in evidence questions 28, 29 and 30 of the deposition of H. W. Piper, as follows:

"28. State whether the Standard Mutual Benefit Corporation has any property in the state of Arkansas. A. No.

"29. State whether it has any place of business in the state of Arkansas. A. No.

"30. State whether it ever designated an agent in the state of Arkansas upon whom service might be had. A. No."

This evidence was offered by the state to show that the company had not obtained the right to do business in the state of Arkansas and had no agent upon whom service might be had.

The state rested, and the appellant moved the court to direct a verdict for it, which was overruled, and exceptions saved.

The appellant then introduced the deposition of H. W. Piper, who testified that he was 31 years of age, lives in Jacksonville, Florida, and is president of the Standard Mutual Benefit Corporation; has been president since May 16, 1936; he never knew Francis A'Hearn or any person by the name of A'Hearn; that he does not know Mrs. S. B. Reed of Mena, Arkansas.

Here the state asked the court to direct the jury not to consider any testimony with reference to the S. B. Reed policy except for throwing light on whether the defendant company engaged in doing business in the state of Arkansas. The attorney for appellant agreed to this, and thereupon the court stated to the jury. "You will only consider testimony with reference to Mrs. Townsend."

The appellant continued then to read the deposition of Mr. Piper, who testified that he did not know Mrs. Townsend of Mena. Mrs. Reed's policy was No. A 50,560 for $1,000, dated September 18, 1936. The witness testified all policies in Series A, 50,000, were issued from a mailing list secured by the corporation on July 1, 1936; that these policies were in force and paid for one month in advance, and the only requirement to keep these policies in force was the payment of the next monthly premium of one dollar when it came due; no applications were received; the policy was issued and mailed to Mrs.

Reed from a mailing list mentioned above; there was a policy issued to Mr. Reed also, and the two policies were mailed together; witness did the mailing. No premiums were ever paid on these policies. Francis A.'Hearn was never the agent of the Standard Mutual Benefit Corporation of Florida and had nothing whatever to do, directly or indirectly, with the transaction with reference to these policies; he has never been directly or indirectly in the employ or service of the insurance corporation. The appellant was licensed to do business on June 10, 1936. In order to create a large membership with the most possible speed the corporation purchased a mailing list containing 20,000 names of people that had mutual insurance or were definitely interested in mutual insurance; the company issued policies to these people and no charge was made to them for the first month's premium, and the policies were mailed, together with a circular letter, which read as follows:

"Would you like to add a maximum of $1,000 to your estate for the protection of your loved ones?

"We thought you would, so we have taken the liberty of issuing in your name one of our wonderful life protection policies that is so modestly priced as to meet the demands of everyone's pocket book.

"The Standard Mutual Benefit Corporation is licensed under the strict supervision of the Department of Insurance of the state of Florida, and its guaranty reserve fund on deposit with the state treasurer, thus assuring policyholders that policy provisions and benefits will be fulfilled at all times.

"This policy comes to you at no cost. As a special favor to a select few, we have omitted the customary application fee. The policy is now in force, subject to policy provisions, and your monthly assessment of one dollar ($1) will not be due until............. Prior to this date you will receive a payment notice card with a self-addressed envelope. Don't let your family suffer from your carelessness in time of need when protection can be procured so cheaply.

"Knowing you will take advantage of this wonderful offer and retain this liberal protection, we take this opportunity of welcoming you among our many members."

A copy of the policy mailed to Mrs. Reed was introduced in evidence, also copy of charter and original by-laws. Mr. Piper's deposition then continued:

Interstate business, then, was carried on by direct mail by appellant's authority; appellant has no agents or branch offices in any state outside of the state of its incorporation, and it has no property nor place of business nor designated agent in the state of Arkansas; has never received any communication by mail or otherwise from Mrs. Reed, S. B. Reed or Mary Townsend; appellant is licensed under the Insurance Department of the state of Florida, and all policies are issued and contracts consummated in Florida.

There was, also, introduced a permit by the insurance department of the state of Florida.

Mrs. Townsend, being recalled, testified, when asked about the policy being delivered to her in Mena, that it was put in her mail box on her porch; that she received it through the mail; it came from Jacksonville, Florida; she could not be positive whether it was mailed at Jacksonville or whether somebody put it in her mail box; there was no letter with it; she found it in her mail box after A.'Hearn was at her house, and she paid him three dollars. The circular letter introduced in evidence was not with her policy. She told A'Hearn that her age was 68.

This was all the evidence, and the court denied appellant's motion for a directed verdict, and read to the jury §§ 2247, 2250 and 2252 of Pope's Digest, and gave other instructions; but the view we take of the case makes it unnecessary to discuss the instructions.

The appellee, in its brief, states clearly the issues involved in the case. It says: "There was, of course, only one issue in the case; did the defendant company do business of an intrastate character in Arkansas? This was the only question raised by the pleading and the only issue developed by evidence."

Appellee relies solely on the transaction with Mrs. Townsend to show that appellant did intrastate business. Appellee concedes that the service in this case would not be sufficient to give the trial court jurisdiction of the

person of the defendant if the acts complained of were interstate, and states: ''If the state's evidence is believed, the transaction was intrastate; if the defendant's evidence is believed the transaction was interstate.''

. If there were any evidence of a substantial character that A'Hearn was the agent of appellant, the state would be correct; but there is no evidence that A'Hearn had any authority to act as agent for appellant at any time. The record does not disclose who A'Hearn is, where he is, nor anything about him except Mrs. Townsend's testimony that he claimed to be the agent of the appellant, had forms of the appellant, sold her a policy, and collected three dollars. She destroyed the policy and the receipts. Her testimony is insufficient to establish the agency of A'Hearn.

There is no principle of law better established than the principle that you can neither prove agency nor the extent of an agent's authority by his declarations or actions. Mechem on Agency, Vol. 1, § 285.

The rule is stated in the above citation as follows:

''The authority of an agent, and its nature and extent, where these questions are directly involved, can only be established by tracing it to its source in some word or act of the alleged principal. The agent certainly cannot confer authority upon himself or make himself agent merely by saying that he is one. Evidence of his own statements, declarations or admissions, made out of courts, therefore (as distinguished from his testimony as a witness), is not admissible against his principal for the purpose of establishing, enlarging or renewing his authority, nor can his authority be established by showing that he acted as agent or that he claimed to have the powers which he assumed to exercise. His written statement and admissions are as objectionable as his oral ones, and his letters, telegrams, advertisements and other writings cannot be used as evidence of his agency. The fact that the agent has since died does not change the rule. Where his authority is in writing he cannot extend its scope by his own declarations. His acts and statements cannot be made use of against the principal until the fact of the agency has been shown by other evidence.''

*American So. Trust Co.* v. *McKee,* 173 Ark. 147, 293 S. W. 50.

The appellee concedes that if the act of the company for which judgment was sought and obtained had constituted interstate business, the trial court could not have acquired jurisdiction under service upon the State Auditor. But it is contended by appellee that not only did A'Hearn represent that he was the agent of the company, but that he had appellant's application forms, and this, together with the other circumstances testified to by Mrs. Townsend, was sufficient to establish A'Hearn's agency. Appellee relies on the case of *Massachusetts Mutual Life Ins. Co.* v. *Brun,* 187 Ark. 790, 62 S. W. 2d 961, but in that case the court said:

"The insurance company had given power of attorney to release the former deed of trust, and had also given Bailey power of attorney to satisfy or release other deeds of trust. Bailey had been connected with the insurance company for 7 or 8 years. When this suit was filed, Bailey made the affidavit attached to the complaint, as local agent of the insurance company. He testified that he made a mistake in signing the affidavit that way; that he was only their rental agent.

"The insurance company furnished Bailey with forms for application of loans. The insurance company had no other representative in Fort Smith except Bailey. It called on him to make appraisement of property. Whenever a loan was made by the insurance company, the papers were sent to Bailey in order that he might have them executed and recorded. In fact, everything Bailey did in connection with this loan is shown by the evidence to have been done as a representative of the insurance company, and not as a representative of the borrower."

In the instant case, however, there is no evidence that A'Hearn had ever been connected with appellant. There is no evidence that the company furnished A'Hearn any forms. There is no evidence that the company ever had any communication of any sort with A'Hearn or that the company or any of its officers had ever heard of him.

The appellee calls attention to the case of *Jerome Hardwood Lbr. Co.* v. *Davis Bros. Lbr. Co.,* 161 Ark. 197,

255 S. W. 906. The question there was whether J. M. Wells was the agent of the appellant and the court said: "The only proof of such agency and authority is the letters and telegrams in the record, signed with the appellant's name by J. M. Wells. It was admitted by the parties that the appellant succeeded to all of the assets of the Bliss-Cook Oak Company at Jerome, Arkansas. A witness testified that he worked for the appellant at Jerome in 1918 or 1919, and that, while he was at work there, appellant was operating under the name of Bliss-Cook Oak Company, and witness knew J. M. Wells, who was employed by the appellant as sales manager. The testimony of the witness further showed that he left Jerome about July 1, 1919." There is no such testimony in the instant case. Mrs. Townsend testified that A'Hearn was "just coming through the country" when he came to her house and sold her the policy. There is no evidence that Mrs. Townsend ever saw A'Hearn at any other time. She had never seen him before that time and has never seen him since. She testified that she sent the money to the company, a one-dollar bill each month in the company's self-addressed envelopes. She does not testify that she got these envelopes from A'Hearn; she does not testify where she got them. The evidence is that the policy was delivered to her by being deposited in her mail box on her porch. She does not know whether it was mailed from Jacksonville, Florida, or whether somebody put it in her mail box. She says it was in her mail box after A'Hearn was at her house, but she does not state how long afterwards.

The undisputed evidence shows that the company mailed out many policies and that Mr. and Mrs. Reed of Mena received policies in the mail. Mrs. Townsend also probably received her policy in the mail in the same manner and without connection between it and the transaction with Mr. A'Hearn. When she received the policy she took it to her attorney, who advised her not to have anything to do with it. If she had dealt with the agent and received the policy and paid for it, she, of course, might have taken it to the attorney; but it is much more probable that if she found the policy in the mail box and

knew nothing about it, she would have taken it to her attorney as she said she did. However, all questions of fact are settled by the jury's verdict if there was, any substantial evidence to support the verdict.

Our conclusion is that there is a total lack of evidence either to show that A'Hearn was the agent of the company, or that the appellant ever did any intrastate business in Arkansas.

The judgment is, therefore, reversed, and the cause remanded with directions to sustain the motion to quash.