HILL CONSTRUCTION CO. and MAYES, SUDDERTH & ETHERIDGE *v.* Mel BRAGG

86-191                                         725 S.W.2d 538

Supreme Court of Arkansas
Opinion delivered March 9, 1987
[Rehearing denied April 13, 1987.]

*Barber, McCaskill, Amsler, Jones & Hale, P.A.*, for appellant Hill Construction Co.

*Bridges, Young, Matthews, Holmes & Drake*, for appellant Mayes, Sudderth & Etheridge.

*Gibson & Ellis*, for appellee.

JACK HOLT, JR., Chief Justice. The appellee, Mel Bragg, was injured when a steel column fell over on him during a construction job. Bragg was an ironworker for the subcontractor on the construction project. He filed suit against the appellant, Hill Construction Co., (Hill), the general contractor for the job, and against the architects and engineers who prepared the plans for the building, the other appellant, Mayes, Sudderth & Etheridge (Mayes). The case was tried before a jury which returned a verdict in Bragg's favor for $250,000. Fault was apportioned between the two appellants: 90% to Hill and 10% to Mayes. It is from that verdict and judgment that this appeal is brought. We find error in the failure to give certain jury instructions and reverse and remand.

The accident occurred after the subcontractor had erected two columns and was attempting to erect and attach a horizontal beam. Bragg and a co-worker were riding on a beam which was to be placed on top of two vertical columns, on a windy day, when one of the vertical columns fell over, injuring Bragg. No guy wires or other bracing were used to temporarily hold the column until the beam was in place. Bragg contended in his lawsuit that the faulty design of the project by the architect and the execution of that design by the general contractor were the cause of his injuries. Hill and Mayes argued that Bragg failed to prove they

were to blame for the column falling and that the subcontractor's action, in not bracing the columns, caused the accident.

Among the errors argued on appeal by Hill and Mayes was the failure of the trial court to give a proffered jury instruction on intervening proximate cause. In support of this jury instruction, Hill and Mayes contend that testimony at the trial indicated that the specifications for the job required the subcontracted steel erector to use guy wires and other supports when raising and supporting the column and these were not used; that the subcontractor's foreman decided on the erection sequence for the columns and decided to use only wooden wedges to temporarily brace the columns; and that testimony was given by the foreman that erecting columns on a windy day is hazardous and that he told Bragg and the co-worker before they got on the beam to "Pay attention to what's going on because I don't like this setup"; and that the same column was subsequently safety erected without altering the design.

Bragg maintains the instruction should not have been given because there was substantial evidence that Hill and Mayes were negligent and that their negligence was the proximate cause of the injury he suffered.

This court has explained that "[t]he question of intervening efficient cause is simply a question whether the original act of negligence or an independent intervening cause is the proximate cause of an injury. . . . Like any other question of proximate causation, the question whether an act or condition is an intervening or concurrent cause is usually a question for the jury." *Larson Machine et al.* v. *Wallace,* 268 Ark. 192, 600 S.W.2d 1 (1980). Furthermore, "[t]he original act or omission is not eliminated as a proximate cause by an intervening cause unless the latter is of itself sufficient to stand as the cause of the injury. . . . The intervening cause must be such that the injury would not have been suffered except for the act, conduct or effect of the intervening agent totally independent of the acts or omission constituting the primary negligence." *Id.* We have also held that the jury may be instructed on intervening cause where a third party, who is not a party to the action, may have been negligent, just so the instruction makes it clear that the third party's negligence must be the sole proximate cause before a

verdict for the defendant is required. *Boyd & Smith* v. *Reddick & Twist*, 264 Ark. 671, 573 S.W.2d 634 (1978).

Here, there was sufficient evidence of the subcontractor's negligence to warrant a jury instruction on intervening proximate cause.

Bragg argues that Hill's and Mayes's objection to this jury instruction and to all of the other jury instructions were waived by their failure to apprise the trial court of their objections before the jury began its deliberations. We disagree.

It is true that no party "may assign as error the giving or failure to give an instruction unless he objects thereto before or at the time the instruction is given." Ark. R. Civ. P. Rule 51. Bragg states in his brief that the record does not reflect that the court was apprised of the objections to instructions to be presented until after the jury had been instructed and immediately after plaintiff's first closing argument. To the contrary, the record reveals what instructions were proffered, including one on independent intervening cause, and after each proffered instruction is a statement in parenthesis: "Defendant Hill's Requested Instruction No. ___ was refused by the Court, to which action Defendant Hill objects." The attorneys for Hill and Mayes also stated in the record, in the presence of the trial judge that the instructions were presented to the court by all three parties the night before the instructions were given and that, by agreement of counsel, they made the record of their objections to the instructions in the midst of closing argument.

In *Beevers, Adm'x* v. *Miller*, 242 Ark. 541, 414 S.W.2d 603 (1967), the appellee contended that appellant's objection to the court's failure to give the questioned instruction came after the jury was instructed. This court held:

> Nothing in the transcript reflects that this was the case. Appellee relies on language in the objection which indicates that appellee's counsel had argued the case to the jury at the time the objection was made. This objection was not contained in the original transcript but supplied in a supplement to the original transcript. . . Neither the original nor the supplement shows when the objection was made. . . . It is suggested that the court was aware of the

objection but requested that appellant wait until the jury was deliberating to put the specific language of the objection into the reporter's record. It is well known among the bench and bar that this is a common practice designed to expedite the trial by diminishing the time jurors must wait for instructions to be settled, prepared in written form and given. In the absence of a specific objection by counsel, which does not appear here, we find no waiver on the part of appellant's counsel under such circumstances.

▪ Here, too, the record is not clear as to exactly when the objections were made. The record does spell out, however, that Hill's attorney stated in the presence of the trial judge that, before the jury was instructed, the court was aware of the instructions it was not going to give, the instructions that had been refused, and the instructions that had been proffered by all parties, to which the trial court did not take issue. While the better and less vulnerable practice would be for the judge to state in the record what instructions had been proffered and refused before the jury is instructed, the record is sufficient under these particular facts to show that Hill and Mayes did not waive their objections to the jury instructions.

Accordingly, the verdict is reversed and remanded for a new trial. Because the other objections raised could arise on retrial, we will address these issues.

▪ Both Hill and Mayes argue that the trial court erred by not directing a verdict in their favor at the close of Bragg's evidence. On appeal of the denial of a directed verdict this court takes a view of the evidence most favorable to the party against whom the verdict is sought and gives it its highest probative value, taking into account all reasonable inferences deducible from it. *Dan Cowling & Assoc.* v. *Clinton Bd. of Educ.*, 273 Ark. 214, 618 S.W.2d 158 (1981). Such a motion is granted only if the evidence viewed in that light would be so insubstantial as to require that a jury verdict for the party be set aside. *Id.* We cannot say the evidence here is so insubstantial. While it is true there was sufficient evidence of the subcontractor's negligence to warrant an instruction on intervening proximate cause, there was also evidence that there were problems with the design of the column's anchor bolts and that they were offset, and that the layout of the

portion of the building which had been constructed when the column was erected was an "ironworker's nightmare." There was sufficient evidence to send the question of Hill's and Mayes's negligence to the jury.

Hill also contends that the trial court erred in admitting into evidence photographs of anchor bolts, base plates and columns not related to the accident. When the pictures were introduced, the jury was told that they were not pictures of the bolts and plates on the column that fell. Pictures of those bolts and plates and of that column were introduced separately. Since Bragg's theory of the case in part was that the design of the anchor bolts and base plates was a cause of the accident, pictures of other parts of the building with similar bolts and plates were relevant. Inasmuch as the admissibility of photographs as an aid to the jury is a matter within the sound discretion of the trial judge, and the judge's ruling is not disturbed on appeal absent an abuse of that discretion, *Riggan* v. *Langley*, 238 Ark. 649, 383 S.W.2d 661 (1964), no error was committed in the introduction of these photographs.

Next, Hill and Mayes argue that it was error for the trial court to instruct the jury on Bragg's future medical expenses and loss of future earnings since no evidence was presented that it was reasonably certain Bragg would incur additional medical expenses or lose earnings in the future. When the record on the objections was made, while the jury was deliberating, Bragg's attorney stated that he had no objection to omitting the requests for future medical expenses and for future earnings from the instruction and that, in his closing argument, he did not ask the jury to return a verdict for those two items. Since Bragg apparently concedes that these instructions were inappropriate based on the proof, this same problem should not recur in a new trial.

Another jury instruction error argued by Hill and Mayes and conceded by Bragg that should not arise on retrial, was the trial court's giving of AMI (Civil) 203 in its entirety. The final bracketed portion of that instruction is not used when the case is submitted on interrogatories, as this case was. We assume, based on the observations and statements of counsel, that this instruction will be properly given in a new trial.

■ Hill and Mayes argue next that the court erred when it refused to give a "modified version" of AMI (Civil) 707. In the modified version, the jury would have been instructed that the subcontractor was an independent contractor and that any negligence of an independent contractor is not chargeable to his employer. AMI 707, on the other hand, provides that one of the questions for the jury to decide is whether a party was an agent or an independent contractor. The note on use to AMI 707 states this instruction may be given only when there is an issue whether a person is an agent or an independent contractor. Hill sought to misuse the instruction since he did not intend to ask the jury to resolve that question, but rather to instruct the jury that the subcontractor was an independent contractor. Accordingly, it was properly refused by the trial court.

■ Hill also objects to the trial court's failure to instruct the jury on comparative fault (AMI 206) so that the jury could decide what role, if any, Bragg's negligence played in the accident. We agree that this was error. There was some evidence that Bragg knew raising the column that day was risky, and that Bragg's back was turned to the column when it fell and struck him, in spite of an admonition by the foreman not to go up there with his "head turned around" and to "[p]ay attention to what's going on" because he didn't "like this setup." In *Holiday Inns, Inc.* v. *Drew*, 276 Ark. 390, 635 S.W.2d 252 (1982), we found reversible error in the trial court's failure to instruct the jury on the issue of that plaintiff's negligence. We stated that the plaintiff's negligence was specifically pled as a defense in the defendant's answer and that testimony was generated at the trial on plaintiff's negligence. Without instructing the jury on AMI (Civil) 206, the court found that nowhere throughout the other instructions could be found an explanation by the court that one of the issues was the affirmative defense of negligence. Here, too, negligence was pled in the answer and the evidence was sufficient to entitle Hill and Mayes to an instruction informing the jury that Bragg's negligence was an affirmative defense.

The remaining assignments of error in this appeal concern Mayes' objections to the refusal of proffered instructions on the duty of care of architects and the warranties for their work.

■ Mayes first contends that the trial court should have

given a modified version of AMI (Civil) 1501 stating that an architect must use the degree of skill and learning ordinarily possessed and used by members of its profession engaged in the same type practice in the locality in which he practices or in a similar locality. The instruction also provided that the jury could consider only the evidence presented by the engineers and architects called as expert witnesses in deciding whether Mayes applied the degree of skill and learning which the law required. Mayes's instruction was properly refused in that it uses the same or similar locality rule as the standard of care for architects and engineers, and that instruction applies only to physicians, surgeons, and dentists. *Carroll-Boone Water Dist.* v. *M & P Equip. Co.*, 280 Ark. 560, 661 S.W.2d 345 (1983). This argument therefore has no merit.

Mayes also maintains the judge erred in refusing proffered instructions about the liability of an architect for negligence but "not for mere unsatisfactory results or mere errors of judgment"; and that an architect/engineer is not liable for faults in construction resulting from defects in the plans as he does not guarantee a perfect plan or a satisfactory result, but may only be liable for a failure to exercise reasonable care and skill.

The jury was instructed that Mayes must be guilty of negligence to be at fault, and negligence was defined as the failure to do something which a reasonably careful person would do. Mayes was also held by the jury instructions to the standard of ordinary care based on the degree of skill and care possessed by architects doing similar work. We find no error in the failure to give the proffered instructions since their content was presented to the jury in other instructions.

Reversed and remanded.