Janice TACKETT, Individually and as
Administratrix of the Estate of
Laurie Taffner, *Deceased v.*
MERCHANT'S SECURITY PATROL

CA 00-949 44 S.W.3d 349

Court of Appeals of Arkansas
Division IV
Opinion delivered May 2, 2001

*McKinnon Law Firm*, by: *Laura J. McKinnon*, for appellant.

*Bassett Law Firm*, by: *Woody Bassett* and *Vince Chadick*, for appellee.

JOSEPHINE LINKER HART, Judge. This appeal is brought from the trial court's grant of summary judgment in favor of appellee. Appellant argues that genuine issues of material fact remain to be decided, thus making summary judgment improper. We disagree and affirm.

On December 3, 1993, appellant was seriously injured and her daughter, Laurie Taffner, was killed when their vehicle was struck by a vehicle driven by John Sargent. In the one and one-half hour to two-hour period prior to the collision, Sargent had consumed at least three to four beers at Speedy's Sport Spot in Fayetteville. He subsequently pled guilty to negligent homicide and second-degree battery in connection with the accident. At the time Sargent left Speedy's, two security guards, Lloyd Taylor and Timothy Sutton, were present on the premises, although they deny actually seeing Sargent that night. Taylor and Sutton were employees of appellee Merchant's Security Patrol. On October 20, 1993, Merchant's had entered into a contract with Speedy to perform certain security services, to wit:

> Prevention of intrusion, entry, larceny, vandalism, abuse, fire or trespass on private property.
> Prevention, observation, or detection of any unauthorized activity on private property. Control, regulation, or direction of the flow or movements of the public, whether by vehicle or otherwise, only to the extent and for the time directly and specifically required to assure protection of property.
> Protection of individuals from bodily harm.

Under the section of the contract entitled "Details of the work to be performed," was the following:

> Parking Lot Patrol/with periodic walk-thrus of Bus. Mon.-Thurs. 7:00pm until 1:00am unless requested to stay longer by client. Two officers, Fri. And Sat. 7:00pm until 2:00am unless requested by client to stay longer.

Appellant filed suit against appellee alleging that its security guards forcibly evicted Sargent from the premises, thus requiring him to drive while intoxicated. However, in her amended complaints, appellant alleged that appellee was negligent in allowing Sargent to leave the premises while in an intoxicated state and in failing to detect that Sargent was driving while intoxicated. Appellee moved for summary judgment alleging that it owed no duty to

appellant. The trial court agreed and granted summary judgment on that basis. This appeal followed.

In summary-judgment cases, we need only decide if the granting of summary judgment was appropriate based upon whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000). Summary judgment is no longer considered a drastic remedy but is regarded simply as one of the tools in the trial court's efficiency arsenal. *See Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Inge v. Walker, supra*. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.*

The first question that must be answered in a negligence case is, what duty, if any, did the defendant owe to the plaintiff? *See Maneth v. Tucker*, 72 Ark. App. 141, 34 S.W.3d 755 (2000). Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other. *Id.*; *see also Mans v. Peoples Bank of Imboden*, 340 Ark. 518, 10 S.W.3d 885 (2000). Ordinarily, a person is under no duty to control the actions of another person, even though he has the practical ability to do so. *See Trammell v. Ramey*, 231 Ark. 260, 329 S.W.2d 153 (1959). One is not liable for the acts of another person unless a special relationship exists between the two, such as master and servant, *see Boren v. Worthen Nat'l Bank*, 324 Ark. 416, 921 S.W.2d 934 (1996), or unless a special relationship exists between him and the victim which gives the victim the right to protection. *See Smith v. Hansen*, 323 Ark. 188, 914 S.W.2d 285 (1996). The question of what duty is owed to the plaintiff is always one of law. *Mans v. Peoples Bank of Imboden, supra*.

Appellant argues that appellee owed a common-law duty of reasonable care to her to train its employees to detect and observe intoxicated persons and to employ more security guards on the night the accident occurred.[1] However, she does not demonstrate that any special relationship existed between either appellee and

---

[1] Although appellant alleged in her first complaint that appellee's guards forcibly evicted Sargent from the premises, she does not urge this theory on appeal. We note that she presented no proof in her response to appellee's motion for summary judgment to rebut the guards' testimony that they did not see Sargent on the night in question.

Sargent or appellee and herself. In the absence of such a relationship, no duty is owed by appellee to appellant under traditional tort law.

However, a duty exists to protect persons from the acts of other persons in connection with the operation of a tavern. *See Industrial Park Businessmen's Club v. Buck*, 252 Ark. 513, 479 S.W.2d 842 (1972), and *Burns v. Boot Scooters, Inc.*, 61 Ark. App. 124, 965 S.W.2d 798 (1998). In those cases, it was held that a tavern owner had a duty to protect its own patrons from injury at the hands of others. Here, we are not concerned with the question of the liability of a tavern owner, nor with injury to a patron of the tavern. Instead, we address the duty owed by a security company to a person who was not present on the premises the company was guarding. We have found no case, and appellant has cited us to none, imposing a common-law duty in such a situation.

Although appellant relies on *Cobb v. Indian Springs, Inc.*, 258 Ark. 9, 522 S.W.2d 383 (1975), it is distinguishable. In *Cobb*, a security guard encouraged a driver to engage in unreasonable conduct that later resulted in an accident. There is no evidence in this case that appellee's security guards encouraged Sargent to drive while intoxicated.

Appellant argues next that the contract between appellee and Speedy's Sport Spot created a duty on the part of appellee to "prevent, detect, and observe unauthorized activity." She points not only to this contractual language, but to the deposition testimony of Lloyd Taylor and Timothy Sutton that they felt they would have a general duty to call the police if they saw an intoxicated person getting into his vehicle, although they denied that such a duty was part of their job description.

A duty of care may arise out of a contractual relationship between two parties. *See Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983). In that case, appellant had a contract with appellee, an employment agency. She claimed that the agency was negligent in directing her to a prospective employer who abducted and raped her. Our supreme court reversed a directed verdict in favor of the agency and recognized that appellant's negligence action was based on the agency's duty of care created by the contractual relationship between the agency and appellant. In the case before us, it is clear that appellee had certain duties under its contract with Speedy's, among them, the "prevention, observation, or detection of any unauthorized activity on

private property" and the "protection of individuals from bodily harm." However, while the contract imposed such duties on appellee, there is nothing to indicate that the duties were owed to anyone other than Speedy's or perhaps Speedy's patrons, *i.e.*, persons and property on Speedy's premises. It is presumed that parties contract only for themselves. *Little Rock Utility v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 902 S.W.2d 760 (1995). A contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the parties. *Id.* Even viewing the evidence in a light most favorable to appellant, there is nothing in the contract between Speedy's and appellee to indicate that it was intended to benefit appellant. Thus, we agree with the trial court that the contract created no duty upon which appellant could premise a negligence action.

We turn now to appellant's argument that security companies should be held to the same standard of liability as alcoholic beverage retailers, as set forth in *Jackson v. Cadillac Club, Inc.*, 337 Ark. 24, 986 S.W.2d 410 (1999), and *Shannon v. Wilson*, 329 Ark. 143, 947 S.W.2d 349 (1997). In *Shannon*, our supreme court broke with years of precedent and recognized that a vendor who sells alcohol to a minor might incur tort liability if the minor subsequently causes injuries to others while intoxicated. In *Jackson v. Cadillac Club*, that holding was extended to encompass a vendor selling alcohol to an already-intoxicated person. Appellant states, correctly, that the holdings in those cases were based in part on the idea that the Arkansas legislature established a high duty of care to be observed by those who are licensed to sell alcohol. The legislation, codified at Ark. Code Ann. § 3-3-218(a) and (b) (Repl. 1996), states in pertinent part:

> (a) It is the specifically declared policy of the General Assembly that all licenses issued to establishments for the sale or dispensing of alcoholic beverages are privilege licenses, and the holder of such privilege license is to be held to a high duty of care in the operation of the licensed establishment.

> (b) It is the duty of every holder of an alcoholic beverage permit issued by the State of Arkansas to operate the business wherein alcoholic beverages are sold or dispensed in a manner which is in the public interest, and does not endanger the public, health, welfare or safety.

Appellant argues that the legislature, by passage of the Private Investigators and Private Security Agencies Act, has imposed on security

guard companies a similar duty to refrain from endangering the public health, welfare, and safety. *See* Ark. Code Ann. §§ 17-40-101 to 353 (Repl. 1995 and Supp. 1999).

 Appellant's argument fails to recognize that the legislature has not expressly imposed upon security guard agencies the same "high duty of care" required of alcoholic beverage vendors. Appellant points out that Act 429 of 1977 and Act 792 of 1981, which concern the licensing of security agencies, refer to the need to "protect the public" and to the "public peace, health, [and] safety." However, such language is contained in the emergency clauses of both acts, not in directives toward the security agencies. We have found no language in the Act, and appellant has cited us to none, that compares with the language the legislature used to impose an enhanced duty of care on the vendor of alcoholic beverages. Thus, we decline to extend the rationale in *Shannon* and *Jackson* to this case.

 Finally, we consider appellant's argument that appellee should be held "to a professional standard of care." She claims that liability might be imposed on appellee as it is on other professionals in connection with Ark. Code Ann. §§ 16-114-301 to -303 (Supp. 1999). We are unable to determine how these statutes might be used to create a duty on the part of appellee. These statutes apply only to accountants and attorneys, and appellant offers no convincing argument as to why they should apply to security companies.

Affirmed.

NEAL and BAKER, JJ., agree.